## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (BALTIMORE)

| | |
|---|---|
| ORRSTOWN BANK | * |
|     Plaintiff, | * |
| v. | *  Civil Action No. 1:12-CV-00345-RDB |
| ARES INVESTMENTS GROUP, et al., | * |
|     Defendants. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## FIRST AMENDED ANSWER TO COMPLAINT FOR
## CONFESSION OF JUDGMENT AND BREACH OF CONTRACT
## AND COUNTERCLAIM

Defendants Ares Investment Group, LLC ("Ares"); Aristaeus, LLC ("Aristaeus"); Aristodemos Capital Group, LLC ("Aristodemos"); Ariston Real Estate Group, LLC ("Ariston"); Catania USA, LLC ("Catania"); Have A Bowl, LLC ("Bowl"); Northwind Townhomes, LLC ("Northwind"); Polar, LLC ("Polar"); and Ugo, LLC ("UGO") (collectively, the "Azadi Entities" or "Entity Defendants"), Morris Azadi ("Morris"), Ash Azadi ("Ash") and Simin Azadi ("Simin") (collectively, the "Azadis" or the "Individual Defendants" and together with the Entity Defendants, collectively, the "Defendants") by their undersigned counsel, pursuant to Rules 88, 13 and 1315 of the Federal Rules of Civil Procedure file this First Amended Answer to Complaint for Confession of Judgment and Breach of Contract and Counterclaim (the "Answer") in response to the Complaint for Confession of Judgment and Breach of Contract (the "Complaint") filed by Orrstown Bank (alternatively, "Orrstown," the "Bank" or the "Plaintiff") and for reasons state:

### The Parties

1.      Defendants admit the allegations in paragraph 1 of the Complaint.

2.      Defendants admit the allegations in paragraph 2 of the Complaint.

3.      Defendants admit the allegations in paragraph 3 of the Complaint.

4.      Defendants admit the allegations in paragraph 4 of the Complaint.

**Jurisdiction and Venue**

5.      The first sentence of paragraph 5 of the Complaint states a legal conclusion to which no response is required.  Defendants admit the remaining allegations in paragraph 5 of the Complaint.

6.      Paragraph 6 of the Complaint states a legal conclusion to which no response is required.

7.      Paragraph 7 of the Complaint states a legal conclusion to which no response is required.

**Facts**

8.      Defendants admit Plaintiff has extended certain loans or lines of credit to one or more of the Defendants, but deny the remaining allegations of paragraph 8 of the Complaint.

9.      Defendants deny that all of the Defendants requested five of the loans and lines of credit extended by Orrstown for the purposes of financing two real estate development projects in or near Hagerstown, Maryland.   The Defendants admit that Orrstown did extend financing to certain of the Defendants for a conversion of a former hotel building located at 90-98 Washington Street, Hagerstown, Maryland  21740 into residential units as well as for office and retail use and for the development of a bowling alley, family entertainment complex and office at 19330 Leitersburg Pike, Hagerstown, Maryland 21742.  Defendants further deny that all of the financing promised for the two projects referenced in paragraph 9 of the Complaint was provided.

10.     The Defendants deny the allegations in paragraph 10 of the Complaint, that the chart provided therein sets forth a full and accurate summary of the alleged Loans.

11.     Defendants deny the allegations in paragraph 11 of the Complaint.

12.     Paragraph 12 of the Complaints states a legal conclusion to which to no response is required.  The alleged documents speak for themselves, and to the extent the Bank failed to honor its obligations or breached duties owed to any one or more of the Defendants, the Defendants would be relieved of any purported obligations.

13.     Paragraph 13 states a legal conclusion to which no response is required.

14.     The first sentence of paragraph 14 of the Complaint states a legal conclusion to which no response is required.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 14 of the Complaint.

15.     Defendants deny the allegations in paragraph 15 of the Complaint.

16.     Defendants deny the allegations in paragraph 16 of the Complaint.  Defendants further state, that the Plaintiff has failed to show it calculated the alleged attorneys' fees and interest.

17.     Defendants deny the allegations in paragraph 17 of the Complaint, but does admit that certain of the documents referenced in the Complaint contain language which purports to allow for confession of judgment.

## Count I
## (Confession of Judgment – Ares)

18.     Defendants' responses to paragraphs 1 through 17 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

19.     Defendants admit that Ares executed a Guaranty Agreement (OT0064 through OT0071) with respect to two loans as defined in Exhibit A to that Guaranty Agreement.  There is

no reference to any loan number and the Guaranty Agreement purports to include confession of judgment language, which language is not conspicuous.  Defendants deny that Ares executed the Guaranty Agreement identified as Exhibit 2G in the Complaint; indeed, Ares is not a named party to said Guaranty Agreement.  *See* Complaint Exhibit 2G at OT0135-144.  Defendants admit that Ares signed the Guaranty Agreement identified as part of Exhibit 2I and that such Guaranty Agreement includes language that purports to be confessed judgment language that is not conspicuously in the document, with respect to the loans as defined, without reference to loan numbers, in Exhibit A to said Guaranty Agreement.  Defendants deny that Ares executed the Guaranty Agreement referenced as being a part of Exhibit 2J (OT0210 through OT0223).

20.     Defendants deny the allegations in paragraph 20 of the Complaint.

21.     Defendants admit that Ares executed a document entitled "Commercial Guaranty" with respect to Loan No. ******96002 which document contains purported confession of judgment language.

22.     Paragraph 22 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

23.     The first sentence of paragraph 23 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 23 of the Complaint.

24.     Defendants deny the allegations in paragraph 24 of the Complaint.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count II
## (Breach of Contract – Ares)

26.     Defendants' responses to paragraphs 1 through 25 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

27.     Defendants deny the allegations in paragraph 27 of the Complaint.

28.     Defendants deny the allegations in paragraph 28 of the Complaint.

29.     Defendants admit that Ares executed a document entitled "Commercial Guaranty" with respect to Loan No. ******96002 which document contains purported confession of judgment language.

30.     Paragraph 30 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

31.     The first sentence of paragraph 31 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 31 of the Complaint.

32.     Defendants deny the allegations in paragraph 32 of the Complaint.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint.

WHEREFORE, Defendants respectfully request that Count II of the Complaint be dismissed with prejudice.

## Count III
### (Confession of Judgment – Aristaeus)

34.     Defendants' responses to paragraphs 1 through 33 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

35.     Defendants admit that Aristaeus executed documents entitled "Guaranty Agreements" for certain loans as specifically defined in Exhibit A to each of said agreements, but which loans are not identified by any loan numbers.  Defendants admit that each of the Guaranty Agreements appearing at Exhibits 2B, 2G, and 2J include language that purports to be confession of judgment language, but that such language is inconspicuous.  To the extent any other allegation express or implied is made in paragraph 35 of the Complaint, such allegation is denied.

36.     Defendants deny the allegations in paragraph 36 of the Complaint.

37.     The first sentence of paragraph 37 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 37 of the Complaint.

38.     Defendants deny the allegations in paragraph 38 of the Complaint.

39.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count IV
### (Breach of Contract – Aristaeus)

40.     Defendants' responses to paragraphs 1 through 39 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

41.      Defendants admit Aristaeus executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 of the Complaint.

42.      Defendants deny the allegations in paragraph 42 of the Complaint.

43.      Defendants admit that Aristaeus signed documents entitled "Commercial Guaranty" for loan nos. ******99002 and ******99005.

44.      Paragraph 44 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

45.      Defendants admit that Aristaeus executed a document entitled "Modification and Assumption Agreement" with respect to a specific loan as defined in the agreement and a so-called "New Loan" as defined therein as well, but which loans are not identified by any loan number.

46.      Paragraph 46 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

47.      The first sentence of paragraph 47 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 47 of the Complaint.

48.      Defendants deny the allegations in paragraph 48 of the Complaint.

49.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint.

WHEREFORE, Defendants respectfully request that Count IV of the Complaint be dismissed with prejudice.

## Count V
### (Confession of Judgment – Aristodemos)

50.     Defendants' responses to paragraphs 1 through 49 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

51.     Defendants admit Arisodemos executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 of the Complaint.

52.     Defendants deny the allegations in paragraph 52 of the Complaint.

53.     Defendants admit that Aristodemos is defined as the Borrower on a certain promissory note identified as Exhibit 1K and another identified as Exhibit 1L in the Complaint, each of which purports to contain confession of judgment language which is not conspicuously identified in either document.  Defendants deny that said promissory notes are identified by a particular loan number and deny any remaining expressed or implied allegations in paragraph 53 of the Complaint.

54.     The first sentence of paragraph 54 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 54 of the Complaint.

55.     Defendants deny the allegations in paragraph 55 of the Complaint.

56.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

**Count VI**
**(Breach of Contract – Aristodemos)**

57.     Defendants' responses to paragraphs 1 through 56 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

58.     Defendants admit Aristodemos executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 of the Complaint.

59.     Defendants deny the allegations in paragraph 59 of the Complaint.

60.     Defendants admit that Aristodemos executed a document entitled "Modification and Assumption Agreement" with respect to a specific loan as defined in the agreement and a so-called "New Loan" as defined therein as well, but which loans are not identified by any loan number.

61.     Paragraph 61 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

62.     Defendants admit that Aristodemos is defined as the Borrower on a certain promissory note identified as Exhibit 1K and another identified as Exhibit 1L in the Complaint, each of which purport to contain confession of judgment language which is not conspicuously identified in either document.  Defendants deny that said promissory notes are identified by a particular loan number and deny any remaining expressed or implied allegations of paragraph 62 of the Complaint.

63.     The first sentence of paragraph 63 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 63 of the Complaint.

64.     Defendants deny the allegations in paragraph 64 of the Complaint.

65.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint.

WHEREFORE, Defendants respectfully request that Count VI of the Complaint be dismissed with prejudice.

## Count VII
## (Confession of Judgment – Ariston)

66.     Defendants' responses to paragraphs 1 through 65 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

67.     Defendants admit Ariston executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 67 of the Complaint.

68.     Defendants deny the allegations in paragraph 68 of the Complaint.

69.     The first sentence of paragraph 69 states a legal conclusion to which no response is required.   Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 69 of the Complaint.

70.     Defendants deny the allegations in paragraph 70 of the Complaint.

71.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count VIII
## (Breach of Contract – Ariston)

72.     Defendants' responses to paragraphs 1 through 71 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

73.     Defendants admit Aristaeus executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 73 of the Complaint.

74.     Defendants deny the allegations in paragraph 74 of the Complaint.

75.     Defendants admit the allegations in paragraph 75 of the Complaint.

76.     Paragraph 76 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

77.     Defendants admit that Ariston executed a document entitled "Modification and Assumption Agreement" with respect to a specific loan as defined in the agreement and a so-called "New Loan" as defined therein as well, but which loans are not identified by any loan number.

78.     Paragraph 78 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

79.     The first sentence of paragraph 79 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 79 of the Complaint.

80.     Defendants deny the allegations in paragraph 80 of the Complaint.

81.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 of the Complaint.

WHEREFORE, Defendants respectfully request that Count VIII of the Complaint be dismissed with prejudice.

**Count IX**
**(Confession of Judgment – Ash)**

82.     Defendants' responses to paragraphs 1 through 81 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

83.     Defendants admit that Ash executed promissory notes for loan numbers ******96001, ******96002 and ******90101 and that he executed documents entitled "Promissory Note" which are not identified by a particular loan number.   Defendants deny therefore the characterization of the promissory notes as alleged in paragraph 83 of the Complaint and any remaining expressed or implied allegation of paragraph 83 of the Complaint.

84.     Defendants admit Ash executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 84 of the Complaint.

85.     Defendants deny the allegations in paragraph 85 of the Complaint.

86.     The first sentence of paragraph 86 states a legal conclusion to which no response is required.   Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 86 of the Complaint.

87.     Defendants deny the allegations in paragraph 87 of the Complaint.

88.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

**Count X**
**(Breach of Contract – Ash)**

89.     Defendants' responses to paragraphs 1 through 88 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

90.     Defendants admit that Ash is identified as a borrower under promissory notes for loan numbers ******96002, ******99001, ******99004, ******90101 and ******99005. Defendants admit that Ash executed documents entitled "Promissory Note" which are not identified by a particular loan number.  Defendants deny therefore the characterization of the promissory notes as alleged in paragraph 90 of the Complaint and any remaining expressed or implied allegation of paragraph 90 of the Complaint.

91.     Defendants admit Ash executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 of the Complaint.

92.     Defendants deny the allegations in paragraph 92 of the Complaint.

93.     The first sentence of paragraph 93 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations of the Complaint.

94.     Defendants deny the allegations in paragraph 94 of the Complaint.

95.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95 of the Complaint.

WHEREFORE, Defendants respectfully request that Count X of the Complaint be dismissed with prejudice.

**Count XI**
**(Confession of Judgment – Morris)**

96.     Defendants' responses to paragraphs 1 through 95 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

97.     Defendants admit that Morris is identified as a borrower under promissory notes for loan numbers ******96002, ******99001, ******99004, ******90101 and ******99005. Defendants admit that Morris executed documents entitled "Promissory Note" which are not identified by a particular loan number.  Defendants deny therefore the characterization of the promissory notes as alleged in paragraph 97 of the Complaint and any remaining expressed or implied allegation of paragraph 97 of the Complaint.

98.     Defendants admit Morris executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98 of the Complaint.

99.     Defendants deny the allegations in paragraph 99 of the Complaint.

100.    The first sentence of paragraph 100 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations of paragraph 100 of the Complaint.

101.    Defendants deny the allegations in paragraph 101 of the Complaint.

102.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XII
## (Breach of Contract – Morris)

103.     Defendants' responses to paragraphs 1 through 102 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

104.     Defendants admit that Morris is identified as a borrower under promissory notes for loan numbers ******96002, ******99001, ******99004, ******90101 and ******99005. Defendants admit that Morris executed documents entitled "Promissory Note" which are not identified by a particular loan number.  Defendants deny therefore the characterization of the promissory notes as alleged in paragraph 104 of the Complaint and any remaining expressed or implied allegation of paragraph 104 of the Complaint.

105.     Defendants admit Morris executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 105 of the Complaint.

106.     Defendants deny the allegations in paragraph 106 of the Complaint.

107.     The first sentence of paragraph 107 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 107 of the Complaint.

108.     Defendants deny the allegations in paragraph 108 of the Complaint.

109.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XII of the Complaint be dismissed with prejudice.

## Count XIII
### (Confession of Judgment – Simin)

110.     Defendants' responses to paragraphs 1 through 109 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

111.     Defendants admit that Simin is identified as a borrower on various notes, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 111 of the Complaint.

112.     Defendants admit Simin executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112 of the Complaint.

113.     Defendants deny the allegations in paragraph 113 of the Complaint.

114.     The first sentence of paragraph 114 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 114 of the Complaint.

115.     Defendants deny the allegations in paragraph 115 of the Complaint.

116.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XIV
### (Breach of Contract – Simin)

117.     Defendants' responses to paragraphs 1 through 116 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

118.    Defendants admit that Simin is identified as a borrower on various notes, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 118 of the Complaint.

119.    Defendants admit Simin executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 119 of the Complaint.

120.    Defendants deny the allegations in paragraph 120 of the Complaint.

121.    The first sentence of paragraph 121 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 121 of the Complaint.

122.    Defendants deny the allegations in paragraph 122 of the Complaint.

123.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XIV of the Complaint be dismissed with prejudice.

## Count XV
### (Confession of Judgment – Catania)

124.    Defendants' responses to paragraphs 1 through 123 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

125.    Defendants admit Catania executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 125 of the Complaint. Further, Defendants admit that Catania is shown as a guarantor on a document entitled "Commercial Guaranty" for loan number ******90101.

126.    Defendants deny the allegations in paragraph 126 of the Complaint.

127.     The first sentence of paragraph 127 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 127 of the Complaint.

128.     Defendants deny the allegations in paragraph 128 of the Complaint.

129.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XVI
## (Breach of Contract – Catania)

130.     Defendants' responses to paragraphs 1 through 129 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

131.     Defendants admit Catania executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 131 of the Complaint. Further, Defendants admit that Catania is shown as a guarantor on a document entitled "Commercial Guaranty" for loan numbers ******90101.

132.     Defendants deny the allegations in paragraph 132 of the Complaint.

133.     The first sentence of paragraph 133 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 133 of the Complaint.

134.     Defendants deny the allegations in paragraph 134 of the Complaint.

135.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XVI of the Complaint be dismissed with prejudice.

## Count XVII
## (Confession of Judgment – Bowl)

136.     Defendants' Responses to paragraphs 1 through 135 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

137.     Defendants admit Bowl executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 137 of the Complaint.

138.     Defendants deny the allegations in paragraph 138 of the Complaint.

139.     The first sentence of paragraph 139 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 139 of the Complaint.

140.     Defendants deny the allegations in paragraph 140 of the Complaint.

141.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XVIII
## (Breach of Contract – Bowl)

142.     Defendants responses to paragraphs 1 through 141 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

143.    Defendants admit Bowl executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 143 of the Complaint.

144.    Defendants deny the allegations in paragraph 144 of the Complaint.

145.    The first sentence of paragraph 145 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 145 of the Complaint.

146.    Defendants deny the allegations in paragraph 146 of the Complaint.

147.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XVIII of the Complaint be dismissed with prejudice.

## Count XIX
## (Confession of Judgment – Northwind)

148.    Defendants' responses to paragraphs 1 through 147 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

149.    Defendants admit Northwind executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 149 of the Complaint.

150.    Defendants deny the allegations in paragraph 150 of the Complaint.

151.    The first sentence of paragraph 151 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations of the Complaint.

152.    Defendants deny the allegations in paragraph 152 of the Complaint.

153.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XX
## (Breach of Contract  - Northwind)

154.    Defendants' responses to paragraphs 1 through 153 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

155.    Defendants admit Northwind executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 155 of the Complaint.

156.    Defendants deny the allegations in paragraph 156 of the Complaint.

157.    Defendants admit the allegations in paragraph 157 of the Complaint.

158.    Paragraph 158 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

159.    Defendants admit that Northwind executed a document entitled "Modification and Assumption Agreement" with respect to a specific loan as defined in the agreement and a so-called "New Loan" as defined therein as well, but which loans are not identified by any loan number. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 159 of the Complaint.

160.    Paragraph 160 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

21

161.     The first sentence of paragraph 161 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 161 of the Complaint.

162.     Defendants deny the allegations of paragraph 162 of the Complaint.

163.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 163 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XX of the Complaint be dismissed with prejudice.

## Count XXI
### (Confession of Judgment – Polar)

164.     Defendants' responses to paragraphs 1 through 164 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

165.     Defendants admit Polar executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 165 of the Complaint.

166.     Defendants deny the allegations in paragraph 166 of the Complaint.

167.     The first sentence of paragraph 167 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 167 of the Complaint.

168.     Defendants deny the allegations in paragraph 168 of the Complaint.

169.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 169 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XXII
## (Breach of Contract – Polar)

170.    Defendants' responses to paragraphs 1 through 169 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

171.    Defendants admit Polar executed certain Guaranty Agreements, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 171 of the Complaint.

172.    Defendants deny the allegations in paragraph 172 of the Complaint.

173.    Defendants admit that Polar executed a document entitled "Modification and Assumption Agreement" with respect to a specific loan as defined in the agreement and a so-called "New Loan" as defined therein as well, but which loans are not identified by any loan number.

174.    Paragraph 174 states a legal conclusion to which no response is required.  Further, the document speaks for itself.

175.    The first sentence of paragraph 175 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 175 of the Complaint.

176.    Defendants deny the allegations in paragraph 176 of the Complaint.

177.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 177 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XXII of the Complaint be dismissed with prejudice.

## Count XXIII
### (Confession of Judgment – UGO)

178.    Defendants' responses to paragraphs 1 through 177 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

179.    Defendants admit that UGO signed a promissory note under which it is identified as the borrower for Loan ******30101.

180.    The first sentence of paragraph 180 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 180 of the Complaint.

181.    Defendants deny the allegations in paragraph 181 of the Complaint.

182.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 182 of the Complaint.

WHEREFORE, Defendants request judgment by confession be vacated and judgment entered on behalf of the Defendants against the Plaintiffs, along with such other and further relief as the Court deems just and proper under the circumstances.

## Count XXIV
### (Breach of Contract – UGO)

183.    Defendants' responses to paragraphs 1 through 182 of the Complaint, inclusive, are incorporated herein by reference as if set forth fully herein.

184.    Defendants admit that UGO signed a promissory note under which it is identified as the borrower for Loan ******30101.

185.    The first sentence of paragraph 185 states a legal conclusion to which no response is required.  Defendants admit that the Plaintiff issued demand letters, but deny the remaining allegations in paragraph 185 of the Complaint.

186.    Defendants deny the allegations in paragraph 186 of the Complaint.

187.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 187 of the Complaint.

WHEREFORE, Defendants respectfully request that Count XX IV of the Complaint be dismissed with prejudice.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

The Counts for Confession of Judgment fail because Orrstown fails to provide the requested specificity to obtain such relief. As to the "specific circumstances" of the execution of each alleged document, the Bank and the Affidavit [of Terry Miller], attached as Exhibit 4 to the Complaint (the "Miller Affidavit"), are silent.  In the Complaint's 186 paragraphs of verbiage with contorted recitations, there is no explanation of the genesis of each document, let alone in the Miller Affidavit.  All the Complaint alleges is that the Bank "extended numerous commercial loans and lines of credit" for the two real estate development projects in or new Hagerstown, Maryland . . . ." *See* Complaint at ¶¶ 8-9.  The recitations that follow constitute a confusing series of allegations without explanation of what gave rise to each note, guaranty and loan document or precisely how each successive document specifically related to other documents.  Likewise, Orrstown provides no further background.  The Miller Affidavit does nothing to amplify the Complaint.  Indeed, it fails to give the specific ages of the Azadis, a requirement of Local Rule 108, but merely states they are adults.  *See* Miller Affidavit at ¶ 6.  Presuming the "specific circumstances" mean just that, the Miller Affidavit is deficient, requiring the vacating of the confessed judgments.  Amidst the

morass of recited notes, agreements, guaranties and the like and the summary listing of the amounts allegedly due, the Miller Affidavit simply does not provide the requisite information. There is no statement of any payments made on a single one of the alleged credit facilities *See* Complaint Exhibit 4, Miller Affidavit.  The Miller Affidavit does not set forth the interest rate for any one of the notes or how the interest and late charges were calculated.  Similarly, while the appraisal fees and attorneys' fees are set forth, they are included in summary form only, with no support given detailing the fees.

   Even the Complaint itself does not educate the Court or the Defendants how the interest is calculated; the calculation of interest is not shown, other than a plain recitation of alleged per diem interest without reference to the governing interest rate or rates over time as they may have changed.  Likewise, the Complaint does not show how even a single payment was applied to the debt.[1]  Accordingly, an accurate statement of the amount due escapes verification. That alone should be fatal to the entry of a confessed judgment.  Similarly, Orrstown's claim for attorneys' fees lacks the requisite support.  Orrstown asserts in its Complaint, without any further back-up, that it is entitled to $132,753.14 for attorneys' fees for drafting its Complaint and the brief accompanying Miller Affidavit and a proposed Order.  *See* Complaint at ¶ 16 and n.3.  The Miller Affidavit provides no further guidance as to how the attorneys' fees were derived. Noticably absent is an affidavit from the Bank's counsel stating that the fees sought are reasonable, let alone one specifically reflecting the hours worked, the hourly rates charged and allocating the fees attributable to each alleged note or guaranty.

   While the Bank tries to minimize the problem of claiming it merely allocated the attorneys' fees pro rata to each of the identified loan numbers [*See* Miller Affidavit, Complaint Exhibit 4 at ¶

9], the methodology is not necessarily reflective of the work performed to file the action against the specific obligors under a given note, thus opening the door to overcharging an alleged obligor for the sake of convenience.

**Third Affirmative Defense**

Orrstown is not free of breach, thus cannot recover for alleged breach of contract by the Defendants.  Orrstown's relationship with the Defendants goes back to when its Vice President of Commercial Lending, Terry Reiber ("Reiber") first sought-out the Azadis to get their business.  Throughout the financial downturns of the economy and the Defendants' issues, the Bank continued to assure the Defendants it would work with them.  Even when Miller took the primary role in handling the relationship with the Defendants' credit facilities, he specifically represented that the Bank would work with them.  The Bank's architectural inspector approved work in the Bowling Center, clearing the way for draws to be funded.  Instead, contrary to the assurances of July and August 2011 that spurred the Defendant to work hard to complete their projects and to line-up resources that they would use to pay to the Bank – approximately $1.8 million-- the Bank suddenly terminated funding and demanded payment of all of the alleged indebtedness.  As a result, the Hamilton Project has come to a standstill and the Azadi's use of personal funds has depleted reserves that could inject liquidity into its various businesses.

**Fourth Affirmative Defense**

The Complaint is barred, in whole or in part, by the doctrine of promissory estoppel.  In meeting with the Defendants, in July and August of 2011, the Bank asserted that it would work with the Azadis and their Entities to fund the projects, giving assurances that funding would continue to flow.  Inasmuch as the Bank, days, if not hours later, curtailed funding draw requests

---

[1] Defendants note that the Miller Affidavit also fails to set forth disclaimers required under Maryland law.  *See* Maryland Rule 2-611(a)(7), (8) and (9) – the specific disclaimers that none of the instruments relate to consumer

for approved work and called defaults of the various loans, as indicated in the Complaint Exhibits, the Bank and its representatives had to know at the time the assurances were given that they were false and that they did not intend to cooperate any longer with the Azadis, or their entities and that, indeed, the funding would cease.  The Bank made the false representation clearly for the purpose of getting said Defendants to push as far along as possible on their projects in the hopes of completing it, so as to facilitate the Bank maximizing its position, even at the further risk of its borrowers.  The Azadis and their entities felt comforted by the repeated assurances of Orrstown and its principal representatives and continued its efforts to complete the recreation center on the Bowling Center and the Hamilton Project as well as continued to pursue the funding of the SBA Loan.  When the Bank proverbially pulled the rug out from under the Defendants, the inability to consummate the SBA Loan required the use of personal funds for the business projects even going so far as the Azadis drawing down personal lines of credit with other banks, and losing an opportunity to recover a tax credit for the Hamilton Project in the amount of nearly $800,000.

**Fifth Affirmative Defense**

Orrstown made material misrepresentations upon which the Defendants relied, resulting in damage to the Defendants.  In meeting with the Defendants, in July and August of 2011, the Bank asserted that it would work with the Azadis and their Entities to fund the projects, giving assurances that funding would continue to flow.  Inasmuch as the Bank, days, if not hours later, curtailed funding draw requests for approved work and called defaults of the various loans, as indicated in the Complaint Exhibits, the Bank and its representatives had to know at the time the assurances were given that they were false and that they did not intend to cooperate any longer with the Azadis, or their entities and that, indeed, the funding would cease.  The Bank made the false representation clearly for the purpose of getting said Defendants to push as far along as

---

loans, a consumer transaction or one subject to the Maryland Retail Installment Sales Agreement.

possible on their projects in the hopes of completing it, so as to facilitate the Bank maximizing its position, even at the further risk of its borrowers.  The Azadis and their entities felt comforted by the repeated assurances of Orrstown and its principal representatives and continued its efforts to complete the recreation center on the Bowling Center and the Hamilton Project as well as continued to pursue the funding of the SBA Loan.  When the Bank proverbially pulled the rug out from under the Defendants, the inability to consummate the SBA Loan required the use of personal funds for the business projects even going so far as the Azadis drawing down personal lines of credit with other banks, and losing an opportunity to recover a tax credit for the Hamilton Project in the amount of nearly $800,000.

**Sixth Affirmative Defense**

Orrstown failed to make disclosures of essential information, upon which non-disclosures the Defendants relied and were damaged thereby.  Defendants maintain a claim against the Bank, hence have a meritorious defense to the confessed judgments, in the nature of concealment or non-disclosure.  The tort is a misrepresentation which involves the concealment of material fact with an intent to deceive.  *See Finch v. Hughes Aircraft Company*, 57 Md. App. 190, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d. 1200 (1984), *cert denied*, 469 U.S. 1215 (1985).  Recovery for non-disclosure follows when a defendant has a duty to disclose and fails to disclose a material fact with the intent to deceive and the plaintiff acts in justifiable reliance on the concealment and thereby suffers damages.  *See Impala Platinum v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 323, 389 A.2d 887, 903 (1978).

By virtue of its contractual undertakings, the Bank had a duty to deal honestly with the Defendants.  Moreover, in light of making the expressed representations in the first instance that it would work the Azadis and the Azadi Entities to continue funding the projects, the Bank assumed

a duty for itself to make disclosure.  The material facts the Bank failed to disclose, in direct contravention of its actual representations, was that it intended to stop funding draw requests, to call defaults on the loans and demand payment.  Experienced bankers such as Miller know full well that failing to disclose honestly its intent would assure that the Defendants would continue to move forward on their various projects and expend whatever resources were necessary, rather than abandon the projects, leaving them in a less valuable state for the Bank.  As Ash Azadi has affirmed, Defendants did move forward with the various projects based on the expressions of assurance from the Bank and as a result suffered damages, including the expenditure of personal funds, the onset of litigation by Olympic Electric, the apparent loss of the historic tax credit for the Hamilton Project and the inability to obtain, thus far, the SBA Loan that was within reach.  The SBA Loan and the tax credit would have allowed the Defendants to curtail the alleged debt by approximately $1.8 million, months ago, but the money has not come to pass because of the Bank's acts and omissions.

### Seventh Affirmative Defense

Orrstown breached its contractual obligations, including but not limited to, oral modifications of the agreements between the parties and the implied covenant of good faith and fair dealing.  At bar, the Bank's actions in refusing to fund the loans, despite direct representations to the contrary, and abrogating Defendants' ability to obtain the SBA Loan and an assured tax credit for their projects frustrated the very purpose of the lending relationship – to complete their real estate projects and pay the Bank.

Orrstown's relationship with the Defendants goes back to when Reiber first sought-out the Azadis to get their business.  Throughout the financial downturns of the economy and the Defendants' issues, the Bank continued to assure the Defendants it would work with them.  Even

when Miller took the primary role in handling the relationship with the Defendants' credit facilities, he specifically represented that the Bank would work with them.  The Bank's architectural inspector approved work in the Bowling Center, clearing the way for draws to be funded.  Instead, contrary to the assurances of July and August 2011 that spurred the Defendant to work hard to complete their projects and to line-up resources that they would use to pay to the Bank – approximately $1.8 million-- the Bank suddenly terminated funding and demanded payment of all of the alleged indebtedness.  As a result, the Hamilton Project has come to a standstill and the Azadi's use of personal funds has depleted reserves that could inject liquidity into its various businesses.  At bar, one thing is certain, Orrstown agreed to fund various projects of the Defendants.  Moreover, the Bank gave specific assurances to its borrowers that it would work with them to bring the projects to completion.  *N.B.* To the extent any governing document states that it can only be modified in writing signed by the parties, Maryland law is clear that oral modifications of the contract are enforceable, notwithstanding such language.  *See* 600 *North Frederick Road, LLC v. Burlington Coat Factory of Maryland, LLC*, 419 Md. 413, 438, 19 A.3d 837, 852 (2010); *Richard F. Kline, Inc. v. Shook Excavating and Hauling, Inc.*, 165 Md. App. 262, 277, 885 A.2d 381, 390; *Mayor and City Council of Baltimore v. Ohio Cas. Ins. Co.*, 50 Md. App. 455, 460, 438 A.2d 933, 936 (1982) (all for the general proposition that oral modifications of a contract are valid despite provision requiring all modifications to be in writing).

 The violation of the implied covenant in Orrstown's contractual undertaking to fund the projects, not to mention the subsequent assurances, which themselves should be deemed oral modifications of any contract, frustrated the Defendants' right to receive the fruits of the contract between the parties.

Inasmuch as the behavior of Orrstown in frustrating the purpose of the contractual relationship between the parties and thwarting the Defendants' very ability to pay off the loans (by interfering with the consummation of the SBA Loan and the receipt of the tax credit), constitutes a claim against the Bank, it so too constitutes a meritorious defense to the Bank's claim, thereby requiring a vacating or, at minimum, an opening of the confessed judgments.

**Eighth Affirmative Defense**

The Complaint is barred, in whole or in part, by failure of consideration.  At bar, at least one of the alleged obligations is not supported by consideration; consequently, judgments confessed thereon should be vacated.

Specifically, with respect to the liability of Ares, Aristodemos, Ariston, Polar and Northwind under an alleged loan modification agreement dated January 12, 2011 (Bates-stamp numbered OT0149 through OT0158, purportedly with respect to Loan No. ******9010), the agreement is void for lack of consideration.  That agreement recites that there existed a prior loan agreement dated June 9, 2008 between Morris and Ash, on one hand, and the Bank, on the other, in the amount of $500,000 which was guaranteed, originally, by Ariston, Catania and Aristaeus.  *See* Complaint Exhibit 2G at OT0149.  The terms of the purported January 12, 2011 modification agreement garners additional guarantors (namely Ares, Aristodemos, Polar and Northwind), for the benefit of the Bank and enumerates alleged ratifications and acknowledgements from the Azadis and certain of their entities, but does not even purport to give anything back to the Defendants.[2]  Accordingly, judgment by confession as against Ares, Aristodemos, Ariston, Polar and Northwind, under an alleged loan modification agreement dated January 12, 2011

---

[2] Indicative of the Byzantine deal structures and loan documents, the January 12, 2011 modification agreement in the same paragraph refers to Ariston as a preexisting guarantor and as an assuming (or new) guarantor.  *See* Complaint Exhibit 2G at OT0149.  The signature pages reflect Ariston as an existing guarantor.  *See* Complaint Exhibit 2G at

(Bates-stamp numbered OT0149 through OT0158), purportedly with respect to Loan No. ******9010 should not be countenanced and this Court should vacate the confessed judgments entered against those Entity Defendants.

## Ninth Affirmative Defense

The Complaint is barred, in whole or in part, by the doctrine of payment. The Defendants have made multiple payments on the various alleged credit facilities, which should have reduced the amount due. The Complaint fails to provide the detail of how the Bank applied the various payments; accordingly, the precise amount of the credits toward payment cannot be ascertained at this time.

## Tenth Affirmative Defense

The Complaint is barred, in whole or in part, by the doctrine of release. By virtue of its contractual undertakings, including, but not limited to, the assurances and modifications provided by the Bank that it would continue to work with the modifications, as detailed in the Second through Ninth Affirmative Defenses, the Bank released the Defendants from some or all of their alleged obligations.

## Eleventh Affirmative Defense

The Complaint is barred, in whole or in part, by the doctrine of waiver. By virtue of its contractual undertakings, including, but not limited to, the assurances and modifications provided by the Bank that it would continue to work with the modifications, as detailed in the Second through Ninth Affirmative Defenses, the Bank waived its rights to enforce some or all of the Defendants' alleged obligations.

---

OT153. Thus, the Bank, cannot even keep straight who owes what to whom and under which document. Accordingly, confessed judgments should not be allowed to stand on the Bank's proffered documents.

Respectfully submitted,


/s/ Gary S. Posner
Paul M. Nussbaum (Bar No. 04394)
Gary S. Posner (Bar No. 05863)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202
Telephone:  (410) 347-8700
Facsimile:  (410) 223-4394
Facsimile:  (410) 223-4306
pnussbaum@wtplaw.com
gposner@wtplaw.com

*Counsel for the Defendants*

## COUNTERCLAIM

Ares Investment Group, LLC ("Ares"); Aristaeus, LLC ("Aristaeus"); Aristodemos

Capital Group, LLC ("Aristodemos"); Ariston Real Estate Group, LLC ("Ariston"); Catania USA,

LLC ("Catania"); Have A Bowl, LLC ("Bowl" or "Have A Bowl"); Northwind Townhomes, LLC

("Northwind"); Polar, LLC ("Polar"); and Ugo, LLC ("UGO") (collectively, the "Entity

Defendants" or the "Azadi Entities"), and Ash Azadi ("Ash"), Morris Azadi ("Morris") and Simin

Azadi ("Simin") (collectively, the "Azadis" or the "Individual Defendants" and collectively with

the Entity Defendants, the "Counterplaintiffs"), by their undersigned counsel, pursuant to Rule 13

of the Federal Rules of Civil Procedure, hereby sue the Plaintiff/Counterdefendant Orrstown Bank

(alternatively "Orrstown," the "Bank" or "Counterdefendant") and states as follows:

### The Parties

1.      Orrstown is a bank organized under the laws of the Commonwealth of

Pennsylvania with at least one branch in Washington County, Maryland, but maintains its

principal place of business in the Commonwealth of Pennsylvania.

2.      Morris, Ash and Simin are individuals resident in the State of Maryland.  Morris

and Simin are husband and wife and Ash is their adult son.  The Entity Defendants are limited

liability companies with all of its members citizens and residents of the State of Maryland.  In

addition to their principal occupation as airline pilots, Morris and Ash are managing members of

each of the Entity Defendants, which they own and control.

### Jurisdiction and Venue

3.      This Court has personal jurisdiction over the Counterdefendant, Orrstown, by

virtue of its filing suit in the above-captioned action and by virtue of it regularly transacting

business within the State of Maryland generally and, in particular, with respect to the transactions

at issue in the Complaint and this Counterclaim.  The Entity Defendants' members exclusively are citizens of the State of Maryland.  Consequently, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the complete diversity between the parties exists and the amount in controversy exceeds $75,000.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), in that the Counterdefendant regularly transacts business within this district and subjects itself to jurisdiction and venue by virtue of its Complaint in the above-captioned action.

## Factual Background

5.     The Azadis, in an effort to better their well-being and that of their successive generations in the United States, entered into the real estate ownership and development field in about 2005.

6.     Ash and Morris are, first and foremost, airline pilots; they are not sophisticated real estate developers.

7.     Simin is a housewife.

8.     The Azadis, in 2002, first acquired the Maryland Historical Society-registered property known as the Governor Hamilton Hotel, located at 90-98 West Washington Street, Hagerstown, Maryland.[13]

9.     Then, Morris and his wife, Simin, acquired two properties, one at 818 Bowman Avenue, which eventually they transferred to Ariston.  (A year later, in May 2006, Ariston acquired 830 Bowman Avenue.)     In about March 2006, the Azadis, through their entity Ares, purchased South Cleveland Plaza, an office building located at 201 South Cleveland Avenue (the

---

[13] Unless otherwise noted, all addresses are located in Hagerstown, Maryland.

"Cleveland Avenue Property"). Orrstown was a tenant in the Cleveland Avenue Property building at that time.

10.     The Azadis also acquired, in 2005, 18-20 West Washington Street and, in 2006, 535 Northern Avenue through Ares.

11.     Glad to seize upon an opportunity, Orrstown's Vice President of Commercial Lending, Terry Reiber ("Reiber"), welcomed the Bank's new landlord at the Cleveland Avenue Property and advocated that Ares and the Azadis refinance all of their real estate holdings with Orrstown.

12.     Impressed with the seemingly open arms of Orrstown and wooed by Reiber, Ares and the Azadis accepted the invitation to refinance with Orrstown.

13.     The Azadis' relationship with Orrstown continued and, in 2009, the Bank financed Aristodemos' acquisition of the land and existing improvements located at 19330 Leitersburg Pike (the "Bowling Alley Property"), destined to be developed into a family entertainment and recreation center, with a bowling alley, an arcade and a bar and restaurant (the "Bowling Center") as well as the development of luxury townhouses by Northwind, in Falling Waters, West Virginia.

14.     The Bowling Alley Property also was designed to have attached office space, fronting Oak Hill Avenue.

15.     At the time, however, Orrstown refused to finance the operating entity's, Have A Bowl, activities at the Bowling Alley Property, mainly the renovation to create the Bowling Center.

16.     In January 2010, the Azadis' fortunes and their entities' took a negative turn. Orrstown abandoned its space in the Cleveland Avenue Property, leaving a gaping hole in Ares' and the Azadi Entities' combined income stream.    At or about the same time, Ash Azadi

communicated to Orrstown loan officer Brian Selders ("Selders") that the Azadi Entities foresaw financial issues looming due to losses of commercial tenants and an inability to find financing for the recreation center on the Bowling Alley Property.

17.     Then, on June 13, 2010, Ash Azadi sent an electronic mail note to Jeffrey Embly, the Bank's CFO ("Embly"), reiterating the Azadi Entities' precarious financial position and the method for resolving the difficulty (the "June 13, 2010 Email"), a true and accurate copy of which is attached hereto and is incorporated by reference herein as **Exhibit 1**.  In particular, Ash requested either financing for the Bowling Center or relief on the interest rates on the entire portfolio of loans in order to obtain much needed relief and Embly authorized the additional credit.

18.     The June 13, 2010 Email specifically urged a decision from the Bank on whether it would provide funding to complete the Bowling Center and another Azadi Entity project, the renovation of the former Hamilton Hotel into a retail, office and residential condominium complex (the "Hamilton Project").  The Hamilton Project was eligible, and since has qualified, for a tax credit of $767,367, while the outstanding funds needed to complete it was under $600,000.

19.     Fortunately, some months later, in January of 2011, the Bank provided additional funding to allow the Azadi Entities to complete the construction of the Bowling Center and extended credit to allow the Hamilton Project to be completed.

20.     In June of 2011, the Bank continued to work with the Azadis and their entities, through the Bank's credit team of Selders, Jeff Gayman and Michael Moore.

21.     The Bank's credit team provided continuous assurances that it would work with the Azadis and the Azadi Entities and the Bank cultivated a bond of trust and confidence that the Bank would help the Azadis and the Entity Defendants complete their projects.  And the Azadis and the Azadi Entities did repose trust and confidence in the Bank.

22.     In late July 2011, Selders introduced John Nickey and a new hire of Orrstown, Terry Miller ("Miller").  At that meeting, which Ash Azadi attended, the Defendants reminded the Bank that a Small Business Administration loan in excess of $1.1 Million (the "SBA Loan") was imminent, but that a notice of default from the Bank would jeopardize the loan.  During this meeting, Miller specifically reassured the Azadis and, through them, their entities, that the Bank would allow them time to stabilize their projects and finances and the Bank would honor its commitment to fund the draw requests for the completion of the Bowling Center.  At the time, there was approximately $800,000 in available funds under the credit facility for the Bowling Center project.

23.     Accordingly, the Azadi Entities continued to pursue the construction of their projects, most notably the Bowling Center, committing to pay contractors on the jobsites and incurring the obligations related thereto.

24.     The Bank's consulting architect reviewed and approved the work performed at the Bowling Alley Property.

25.     In August 2011, the Azadis met, again, with Miller, and provided construction draw requests for payment of subcontractors on the Bowling Center (for which an occupancy permit issued on August 24, 2011).

26.     Despite assurances from Miller that Orrstown would work with the Azadis and the Azadi Entities, however, without advance notice, and just days before the scheduled opening of the Bowling Center, Miller only authorized a portion of the draw requests to pay subcontractors and declined to fund draw requests, despite the approval by the Bank's architectural consultant.

27.     Specifically, despite available funds under the credit facility with Orrstown, the Bank only funded, in round numbers, $65,000 owed to Brunswick Bowling Centers, $14,000 to

the company that installed the arcade game machine card system and $41,500 to the roofer whose invoice was not due, in full, for six months.

28.     Orrstown declined to fund the electrician, Olympia Electric, the HVAC contractor or the invoice for the flooring subcontractor.   Flooring for the Bowling Center was ordered through the Azadis' Catania entity so as to take advantage of its ability to purchase materials at a favorable wholesale cost.   A wholly independent installation subcontractor installed the flooring, but remains unpaid because Orrstown refused to fund the draw request.   Thus, the Azadis were forced to choose between paying the subcontractors, for whom draw requests were denied, from personal funds, to the extent available, or risk the unpaid subcontractors walking off the job, refusing to honor warranties or filing suit.   The Bank prohibited the Azadi Entities from paying in excess of $130,000 for work actually performed at the Bowling Center.

29.     Morris Azadi paid approximately $30,000 from his personal funds or funds drawn from personal lines of credit at other banks.

30.     Many of those subcontractors the Azadis could not pay did walk-off the job and some have refused to honor warranties applicable to their work.

31.     Olympia Electric has gone the extra step, suing Aristodemos and Ash Azadi, personally.

32.     Consequently, the Defendants' businesses, personal fortunes and business reputations have been damaged and diminished.   Likewise, the Counterplaintiffs used another $50,000 of personal funds to cover the opening expenses for the Bowling Center.

33.     Only one week after Miller gave specific assurances that the Bank would work with its borrowers to allow for the projects to stabilize, Miller pulled the proverbial rug out from under them and, on August 26, 2012 issued default notices to the Azadi Entities and the Azadis.

34.     The default notices immediately jeopardized the SBA Loan for over $1.1 Million that the Azadis had secured for the Bowling Center and substantially would have reduced the Defendants' alleged debt to the Bank.

35.     The Azadis made full disclosure to the Bank about the SBA Loan and the Bank knew that its action jeopardized the SBA Loan, but Miller and the Bank did not care.

36.     Instead, Orrstown refused to fund any more project work, including the Bowling Center that stood on the precipice of opening and generating revenue in a few weeks and the Hamilton Project that would generate over $170,000 of net revenue from the historic tax credit, that was going to be paid over to the Bank.

37.     But for Orrstown's precipitous actions, the Azadi Entities, would have been able to pay, approximately, $1.8 Million to the Bank, which would have been realized from the SBA Loan and the gross amount of the tax credit on the Hamilton Project.

38.     Instead, the Azadis are indebted to contractors, they have had to pay personal funds, have not yet received the proceeds of the SBA Loan or the historic tax credit and have had to shut down the Hamilton Project.

39.     Contrary to its undertaking, promises and assurances to work with the Azadis and their entities, the Bank has declined to fund the projects, thereby frustrating the essence of the deals negotiated with the Bank.

## Count I
### (Breach of Contract Including Implied Covenant of Good Faith and Fair Dealing)

40.     The Counterplaintiffs incorporate by reference the allegations in Counterclaim paragraphs 1 through 39, as if set forth fully herein.

41.     Orrstown had executed a series of credit facilities with various of the Counterplaintiffs and obtained certain commitments to repayment from various of the Counterplaintiffs.

42.     In particular, the Bank agreed to fund the Bowling Center, among other projects.

43.     The Bank, after knowing of the Counterplaintiffs' financial condition, expressly agreed to work with them and to cover the draw requests for their signature projects, the Bowling Center and the Hamilton Project.

44.     In addition to the requirements under the financing agreements, the Bank's statements in the Summer of 2011 stood as additional contractual undertakings, in exchange for which the Azadis and the Azadi Entities performed their agreement to pursue and advance more funds to complete their projects.

45.     In August 2011, after promising to work with the Counterplaintiffs and to fund the projects, the Bank terminated funding in material breach of its obligations.

46.     As a result, the Counterplaintiffs were damaged by, among other things, the inability to obtain the SBA Loan for the Bowling Center and an historic tax credit on the Hamilton Project.

47.     Counterplaintiffs additionally have been damaged by having to draw down personal resources to pay for project costs.

48.     Among other losses, the Counterplaintiffs have suffered, thus far due to the Bank's breach, the inability to get the historic tax credit for the Hamilton Project, or the SBA Loan and the loss of personal lines of credit with the Bank and the expenditures of personal funds needed to cover projects to be funded by the Bank, which costs would not have been incurred had the Bank not failed to meet its obligations.

49.     By virtue of its precipitous actions, the Bank precluded the Counterplaintiffs from finishing their projects, squelched receipt of the $1.8 million tax credit from the Hamilton Project and prevented the receipt of the SBA Loan.

50.     By its actions, Orrstown frustrated the essential purpose of any agreements between the Bank and the Counterplaintiffs, namely, the funding and the successful completion of Counterplaintiffs' projects and the repayment of any indebtedness to the Bank.

WHEREFORE, Counterplaintiffs demand judgment against Counterdefendant Orrstown Bank for compensatory damages in the sum of no less than Seventy-Five Thousand Dollars ($75,000) or such other amount as may be proven at trial, plus interest and costs.

## Count II
### (Intentional Misrepresentation)

51.     The Counterplaintiffs incorporate by reference the allegations in Counterclaim paragraphs 1 through 50, as if set forth fully herein.

52.     By virtue of its contractual undertaking and specific assurances to the Counterplaintiffs that the Bank would continue to work with the Counterplaintiffs and fund its projects, Orrstown had a duty to do so.  Additionally, by cultivating over a period of time the Counterplaintiffs' trust and confidence, coupled with the actual reposing of trust and confidence in the Bank by the Counterplaintiffs, the Bank assumed a tort duty to the Counterplaintiffs.

53.     The specific statement that the Bank would work with the Counterplaintiffs with respect to funding the projects constituted assertions of false representations of material fact to the Counterplaintiffs.

54.     The Bank knew the representations made to the Counterplaintiffs were false when they were made as evidenced by the fact that, within days, the Bank decided to stop funding draws, declared default and demanded payment on all of the alleged loans.

55.     The Bank's actions in giving assurances induced the Azadis and the Azadi Entities to continue to move forward with completion of work on their projects for the advantage of the Bank and to the risk of the Counterplaintiffs.  The representations were made with the specific intention of having the Azadis and the Azadi Entities rely upon them.

56.     The Bank's misrepresentations forced the Azadis to choose between paying subcontractors for whom draw requests were denied, from personal funds to the extent available, or risk the unpaid subcontractors walking off the job, refusing to honor warranties or filing suit.

57.     The Counterplaintiffs' actions in continuing to engage contractors for their projects and moving forward with construction all were as a result of the assurances made by the Bank.

58.     As a result, of the intentional misrepresentations by Orrstown, Counterplaintiffs have incurred damages, including, but not limited to, out of pocket losses, as well as the delay, if not the loss, of the SBA Loan and the historic tax credit.

WHEREFORE, Counterplaintiffs demand judgment against Counterdefendant Orrstown Bank for compensatory damages in the sum of no less than Seventy-Five Thousand Dollars ($75,000) or such other amount as may be proven at trial, plus interest and costs.

### Count III
### (Non-Disclosure)

59.     The Counterplaintiffs incorporate by reference the allegations in Counterclaim paragraphs 1 through 58, as if set forth fully herein.

60.     By virtue of the contractual relationship between the parties and the specific representations made by the Bank in the summer of 2011, the Bank had a duty to disclose material information to the Counterplaintiffs.  Additionally, by cultivating over a period of time the Counterplaintiffs' trust and confidence, coupled with the actual reposing of trust and confidence in the Bank by the Counterplaintiffs, the Bank assumed a tort duty to the Counterplaintiffs.

61.     In July and August, 2011, Orrstown deliberately failed to disclose a material fact, that fact being that the Bank had made a decision to terminate funding draw requests for the Counterplaintiffs' construction projects, planned to call a default and would demand full payment for the alleged credit facilities outstanding.

62.     The Bank deliberately concealed the material fact with an intent to deceive the Counterplaintiffs knowing that the Counterplaintiffs would have acted in a different manner had they known of the existence of the undisclosed fact, including, but not limited to, refraining from committing to subcontractors for their projects.  Counterplaintiffs acted in justifiable reliance upon the concealed fact having developed a trusting relationship with the Bank and its representatives who went out of their way to assure the Counterplaintiffs of the Bank's cooperation.  As a result of the Bank's concealment, Counterplaintiffs have suffered damages, including, but not limited to, out of pocket losses, as well as the delay, if not total loss, of the SBA Loan and the historic tax credit.

WHEREFORE, Counterplaintiffs demand judgment against Counterdefendant Orrstown Bank for compensatory damages in the sum of no less than Seventy-Five Thousand Dollars ($75,000) or such other amount as may be proven at trial, plus interest and costs.

Respectfully submitted,


/s/ Gary S. Posner
Paul M. Nussbaum (Bar No. 04394)
Gary S. Posner (Bar No. 05863)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202

Telephone:  (410) 347-8700
Facsimile:  (410) 223-4394
Facsimile:  (410) 223-4306
pnussbaum@wtplaw.com
gposner@wtplaw.com
*Counsel for the Entity Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this ~~9~~30th day of April, 2012, a copy of the foregoing *First Amended Answer To Complaint For Confession Of Judgment And Breach Of Contract And Counterclaim*~~, along with a proposed form of Order~~, was sent, via the Court's ECF system, electronic mail and first class, United States mail, postage prepaid, to:

> Daniel Patrick Moylan, Esquire
> Matthew Ryan Alsip, Esquire
> Christine C. Carey, Esquire
> Venable LLP
> 210 W. Pennsylvania Avenue
> Suite 500
> Towson, Maryland  21204

/s/ Gary S. Posner

~~1994896~~2002044

47

Document comparison by Workshare Compare on Monday, April 30, 2012 6:38:44 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://BALTIMORE/2002044/1 |
| Description | BALTIMORE-#2002044-v1-Azadi/First_Amended_Answer |
| Document 2 ID | file://C:/Users/gposner/AppData/Roaming/OpenText/DM/Temp/BALTIMORE-#2002044-v3-Azadi_First_Amended_Answer.doc |
| Description | BALTIMORE-#2002044-v3-Azadi_First_Amended_Answer |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 30 |
| Deletions | 7 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 37 |